IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIA DEL CARMEN MORALES
SANCHEZ,

        Plaintiff,

        v.

AURELIO GRACIA, et al.,

        Defendants.

CIVIL NO. 04-2393 (JAG)

## REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff María del Carmen Morales Sánchez (hereinafter plaintiff "Morales Sánchez") filed this federal action against defendant Aurelio Gracia, in his personal and official capacity, the latter for purposes of injunctive relief, and as to defendants  Eduardo Nieves Cartagena, Hugo F. Cruz and Frances Miranda Amadeo, in their personal capacity, based on allegations these defendants, all executives and/or employees, along with plaintiff, of the Puerto Rico Electoral Commission, had attempted to force her to make public her political affiliation in order to continue her employment.  Plaintiff Morales Sánchez claims also that, upon her refusal to identify with any political party, she was deprived of her duties and responsibilities and was subject to political discrimination in violation of her First and Fourteenth Amendment of the United States Constitution, the Civil Rights Act under of 1964, as amended, 42 U.S.C.A. §1983, and state law provisions of the Commonwealth of Puerto Rico.[1]

---

[1] Plaintiff submitted in the complaint pendent state claims under 31 L.P.R.A. §5141, the tort statute, Articles 1802 and 1803 requesting damages.  *Complaint ¶ B.*

Maria del Carmen Morales Sánchez v. Aurelio Gracia, et al.
Civil No. 04-2393 (JAG)
Report and Recommendation
Page No. 2

On September 14, 2006, defendants Aurelio Gracia, Eduardo Nieves, Hugo Cruz and Frances Miranda Amadeo (hereinafter the "defendants"), in their personal capacities, submitted a Motion for Summary Judgment as to plaintiff Morales Sánchez' complaint under the Civil Rights Act, the First and Fourteenth Amendment of the United States Constitution and supplemental jurisdiction under state provisions. Defendants submit in their Motion for Summary Judgment that plaintiff 's claims should be dismissed because she lacks a cause of action against defendants. It is defendants' contention plaintiff Morales Sánchez, a career employee, has suffered no adverse employment action, was never dismissed from employment at the Electoral Commission, and has not been denied the corresponding promotions or salary increases. Defendants additionally submit that, if there is a finding that plaintiff suffered an adverse employment action, they would still be entitled to qualified immunity since, at the time they requested Electoral Commission employees, including herein plaintiff, to identify her political affiliation, they were complying with the purposes of the Electoral Law which required compliance with the principle of political party balance in the office where plaintiff Morales Sánchez worked. (**Docket No. 39**).

Thereafter, plaintiff's Opposition to Summary Judgment was filed with exhibits (**Docket No. 45**). Leave to file a reply to opposition was granted by the Court and defendants submitted a reply on December 12, 2006 (**Docket No. 47**). Both parties were granted leave and only defendants argued in addition that plaintiff had not fully complied with local rule in her response and their motion for summary judgment should be considered as unopposed

(**Docket No. 47**).  Defendants' request to strike plaintiff's response is herein denied and same is duly considered in this report.

On March 6, 2007, the court referred these motions to this Magistrate Judge for report and recommendation (**Docket Nos. 51, 52**).  The corresponding translations in the English language by the parties were filed on June 16 and June 18, 2007 respectively, after this Magistrate issued an  order to comply with said requirement (**Docket No. 54**).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©.  Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law."  Vega-Rodríguez v.  Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).  After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact."  Cortés-Irizarry v.  Corporación Insular, 111 F.3d 184, 187 (1st Cir.  1997).  A fact is deemed "material" if it potentially could affect the outcome of the suit.  *Id*.  Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor."  *Id*.

Maria del Carmen Morales Sánchez v. Aurelio Gracia, et al.
Civil No. 04-2393 (JAG)
Report and Recommendation
Page No. 4

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. Puerto Rico Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); see also Tew v. Chase Manhattan Bank, N.A., 728 F. Supp. 1551, 1555 (S.D.Fla. 1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'"). See Pearson v. First N H Mortgage Corp., 200 F.3d 30, 35, n.2 (1st Cir. 1999). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the

nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." Ayala-Genera v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

## CONTESTED/UNCONTESTED FACTS

### A. Defendants' Uncontested Facts.

Defendants established the following facts as uncontested in their request for summary disposition:

1- The Puerto Rico State Electoral Commission (hereinafter the "CEE") was created by virtue of Act No. 4 of December 20, 1977, being an agency of the Commonwealth of Puerto Rico. *Exhibit 1*.

2- Plaintiff Morales Sánchez is a career employee of the CEE since 1978. *Complaint ¶6, Exhibit 7, p. 13*.

3- From June 6, 1995 to June 30, 2000, plaintiff Morales Sánchez held the position of Executive Secretary II at the CEE. *Exhibit 7, p. 14*.

4- On August 23, 2000, plaintiff Morales Sánchez was reclassified to Supervisor of the Operators of Equipment Registry and Data Verification in the Office for Information and Electronic Processing System (hereinafter "OSIPE") at the CEE and received a salary increase and the concession of two merit steps. *Complaint ¶6, Exhibit 7 p. 14; Exhibits 9-10*.

5- Plaintiff Morales Sánchez has been working at all relevant times in OSIPE. *Exhibit 9*.

6- On July 6, 2000, the Puerto Rico Legislature approved Act No. 113 amending the Puerto Rico Electoral Law. *Exhibit 2*.

7- Act No. 113 established the application of political party balance in OSIPE. *Exhibit 2, p. 10*.

8- Act No. 113 ordered the CEE to reorganize the office of OSIPE in order to comply with the political party balance on or before July 1, 2001. *Exhibit 2, p. 10*.

9- On June 26, 2001, in compliance with said Act No. 113, the President of the CEE approved Resolution No. CEE-RS-01-05. *Exhibit 4*.

10- Resolution CEE-RS-01-05 established that all the operational levels, divisions or subdivisions of OSIPE were subjected to the political party balance. *Exhibit 4, ¶ 1, 2, p. 9 ¶ 2*.

11- On April 25, 2003, the Puerto Rico Legislature amended the Puerto Rico Electoral Law and approved Act No. 115. *Exhibit 3*.

12- Act No. 115, amending the Puerto Rico Electoral Law, did not eliminate the applicability of political party balance in OSIPE. *Id.*

13- On May 7, 2003, the Secretary of State of the Commonwealth of Puerto Rico issued a press release stating that political party balance was applicable to OSIPE. *Exhibit 5, p. 3 P2*.

14- On March 12, 2003, the President of CEE restated that political balance in OSIPE would be maintained until the CEE otherwise determined. *Exhibit 6, p. 1*.

15- Plaintiff Morales Sánchez has continued to receive salary increases since the year 2000 until the present time. *Exhibit 11*.

16- Plaintiff Morales Sánchez is not affiliated to any political party. *Exhibit 7, pp. 72-73*.

17- Plaintiff Morales Sánchez has retained her position and her salary.  The benefits of her employment have not been diminished.  *Exhibit 11.*

Based on above, defendants submit plaintiff Morales Sánchez has worked at all relevant times as a career employee at the CEE and her position is assigned to OSIPE.  Although plaintiff does not recognize the applicability of the political party balance in regards to her position because she is a career employee and plaintiff is not affiliated to any political party, she claims that by defendants asking her to identify herself with one of the political parties as a condition of her employment should be deemed discriminatory, regardless that she has not been subject of an adverse employment action.  Thus, defendants aver plaintiff cannot establish a *prima facie* case of discrimination nor can rebut the proposition by defendants they would have taken the same action regardless of plaintiff's political belief, since the reason for their conduct was to comply with the provisions of the Electoral Law.   In the event that the Court would still find plaintiff Morales Sánchez has such *prima facie* case, defendants further argue they are entitled to qualified immunity.

## B.  Plaintiff's Uncontested Facts.

Plaintiff has presented in her response to defendants' request for summary disposition, that:

1.  Since the year 2000 until sometime in 2005, plaintiff refused to identify with a political party and, on account thereof, defendants engaged in a pattern of conduct to make her resign from the position by stripping her from duties as supervisor and excluding her from work related to her supervisory position.  *Exhibit 1, Morales Sánchez' depo. pp. 19, 51-52.*

<u>Maria del Carmen Morales Sánchez v. Aurelio Gracia, et al.</u>
Civil No. 04-2393 (JAG)
Report and Recommendation
Page No. 8

2. Another person was assigned plaintiff's duties and defendants knew they were acting illegally by appointing another person. *Exhibit 2*.

3. Co-defendant Nieves told plaintiff that, if she did not identify with a party, they would have to take her out of her area or out of the agency. *Exhibit 1, Morales Sánchez' depo. P. 52*.

4. Co-defendant Miranda expressed in front of plaintiff that she could not work and had to be taken out if she did not identify with a political party. *Id. p. 55*.

5. Co-defendant Cruz also participated in the discrimination and told plaintiff she had to be removed from the area. *Id. p. 85*.

6. Co-defendant Gracia also participated in the conduct and told plaintiff she had to identify with a party even when Act No. 115 came into effect. *Exhibit 1, pp. 62-63*.

Plaintiff's opposition (**Docket No. 45**) submits defendants failed to mention she was stripped of her duties as a supervisor and excluded from work. (*Pltff's uncontested ¶1*). The only reason for defendants' conduct was plaintiff would not identify herself to any political party. As such, defendants were in violation of plaintiff's First Amendment as to freedom of belief and free association. Plaintiff also submits all defendants knew of their action as could be established by the internal memorandum of the CEE from co-defendant Nieves to co-defendant Gracia and which was copied to the rest of the co-defendants.

## LEGAL ANALYSIS

### A. *Prima Facie* Case.

It is for a plaintiff to first establish a *prima facie case* of discrimination to support a well pleaded summary judgment motion. A party who aspires to oppose a summary judgment

Maria del Carmen Morales Sánchez v. Aurelio Gracia, et al.
Civil No. 04-2393 (JAG)
Report and Recommendation
Page No. 9

motion must spell out his or her arguments squarely and distinctly, or else forever hold his or her peace. Fed.Rules Civ.Proc.Rule 56©, 28 U.S.C.A. *See* Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999); *see also* Sammartano v. Palmas del Mar Properties, 161 F.3d 96 (1st Cir. 1998); Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

Plaintiff must meet the burden to establish a *prima facie* case for a Section 1983 claim. For a claim to be actionable under §1983, sufficient evidence must be presented showing that the action complained of was committed under color of state law and that said conduct worked a denial of rights secured by the United States Constitution. *See* Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir.1996). There are two aspects to the second prong: (1) there must be an actual depravation of a federally protected right; and (2) there must be a causal connection between defendants' conduct and the depravation of such right. See Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir.1989). Additionally, the causal connection element requires that plaintiff establishes for each defendant, that the defendant's own actions deprived the plaintiff of her protected rights. *Id*. at 562 (holding that liability may not be predicated upon a theory of *respondeat superior* because a supervisor can be liable only for his own acts or omissions).

In a political discrimination case, the plaintiff may discredit the proffered non-discriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor. *See* Rodríguez-Ríos v. Cordero, 138 F.3d 22, 26 (1st Cir. 1998); Acevedo-Díaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993); *see also*

Stephens v. Kerrigan, 122 F.3d 171, 181 (3d Cir.1997). In this way, the burden-shifting mechanism is significantly different from the device used in other employment discrimination contexts, such as Title VII cases, where a plaintiff is required to come forward with affirmative evidence that the defendant's nondiscriminatory reason is pretextual. *See* Acevedo-Díaz, 1 F.3d at 67; *see also* Stephens, 122 F.3d at 176 (explaining the distinction between political discrimination and Title VII employment discrimination).

In a political discrimination case as the one herein, defendants bear the burden of persuading the fact finder that their reasons are credible. The evidence by which the plaintiff established her *prima facie* case may suffice for a fact finder to infer that the defendant's reason is pretextual and to effectively check summary judgment. *See* Rodríguez- Ríos, 138 F.3d at 26 ("Where the elements of a sufficient *prima facie* case combine with the fact finder's belief that the ostensible basis for [demoting an] employee was pretextual, ... the fact finder is permitted to infer ... intentional [political] discrimination ....") (quoting Woodman v. Haemonetics Corp., 51 F.3d 1087, 1092 (1st Cir. 1995)); Acevedo-Díaz, 1 F.3d at 69-70 (considering circumstantial evidence that some plaintiffs were "conspicuous targets" for political discrimination as sufficient evidence of pretext).

In contrast to above discussed, under the Mt. Healthy[2] analysis for political discrimination, the burden of persuasion passes to the defendant-employer once the plaintiff produces sufficient evidence of her *prima facie* case. *See Id.* In other words, "the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced

---

[2] The proper standard under Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568 (1977), is whether the protected conduct constitutes a factor in the adverse employment decision.

enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons." *Id.*  *See* Padilla-García v. Guillermo Rodríguez, 212 F.3d 69 (1st Cir. 2000).

Plaintiff herein asserts she was deprived of continued public employment and of the duties of the position of her career employment, to which she was legitimately appointed, and therefore constitutionally, entitled.  However, plaintiff Morales Sánchez has remained employed by the CEE and has not suffered any salary or benefit decreased.  Thus, plaintiff has claimed she was subject to a more "subtle" form of discrimination insofar as being deprived of her work duties, except for supervisory duties as to employees and attendance sheets. *See, e.g.*, Rodríguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 40 (1st Cir. 1993) (*finding* that plaintiff had made out a *prima facie* case of political discrimination where "since his reassignment, plaintiff only has been assigned clerical tasks which take ten minutes a day to perform").

However,  Torres-Martínez v. Puerto Rico Dept. of Corrections, 485 F.3d 19 (1st Cir. 2007) recognized  "[t]he Puerto Rico Supreme Court has said that public employees have no property interest in their job duties[,]" although a degrading of an employee by stripping his duties may be considered as evidence sufficiently severe that may raise to an "unreasonably inferior" position which in turn may warrant a short of termination or constructive discharge cause of action.  *See* Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989).  Footnote at  López Quiñónez v. Puerto Rico Nat. Guard, --- F.Supp.2d ----, 2007 WL 1469435 (D. Puerto Rico, 2007).

Maria del Carmen Morales Sánchez v. Aurelio Gracia, et al.
Civil No. 04-2393 (JAG)
Report and Recommendation
Page No. 12

Taking the parties submission for summary judgment in the light more favorable to non-movant, defendants having the opportunity of a reply to plaintiff's opposition and did not object to the claims of being stripped of most of her duties, plaintiff Morales Sánchez is deemed to have presented a *prima facie* case of discrimination.

However, such *prima facie* case does not conclude the inquiry.  Even if the plaintiff has established the existence of at least such genuine and material issue of fact under the aforementioned standard, she is not necessarily entitled to go to trial. The record also must allow the fact finder to conclude by a preponderance of the evidence that the changes in the non-moving employee's work situation were motivated by discrimination on the basis of lack of political affiliation or the right to associate or not associate with certain groups or individuals in representation of a political party.   "The defendants may seek to establish by a preponderance of the evidence that the changes would have been made regardless of political affiliation." *See* Mt. Healthy, 429 U.S. at 287, 97 S.Ct. at 576; Cordero v. DeJesus-Méndez, 867 F.2d 1, 5 (1st Cir. 1989); Kercado-Meléndez v. Aponte-Roque, 829 F.2d 255, 264 (1st Cir. 1987).

Defendants in the instant case have submitted that, upon requirements of Act No. 113 and Act No. 115 which reformed the Electoral Law of the Commonwealth of Puerto Rico, their internal guidelines consonant with said legal provisions [Resolution CEE-RS-01-05], as well as the then Secretary of State's statements made clear at the time the CEE, including the division where plaintiff held her work (OSIPE) was to seek political party balance in the appointment

Maria del Carmen Morales Sánchez v. Aurelio Gracia, et al.
Civil No. 04-2393 (JAG)
Report and Recommendation
Page No. 13

and hiring of personnel and the distribution of task and duties.[3]  The goal was to obtain, at all levels of each operational unit, division or subdivision of OSIPE and at the CEE, an equal representation in amount, rank, duties and access to employees recommended by the Electoral Commissioners of each main political party, so as to preserve political balance.

It is under the legal provisions of the Electoral Reform Act that the CEE sought to arrange for all its employees political identification and, accordingly, meet the political balance required. Thus, any changes in plaintiff's work situation were not motivated by discrimination on the basis of political affiliation and the changes would have been made regardless of plaintiff's political affiliation.

Plaintiff Morales Sánchez does not contest that the legal provisions were enacted nor does she claim that the internal memorandum is a sham for a discriminatory animus, rather, that her interpretation of the law does not cover her position.  Defendants have submitted sufficient evidence to show otherwise, as above stated.

For this reason, this Magistrate Judge is of the opinion that  plaintiff does not meet the Mt. Healthy requirements to establish a discriminatory animus.

**B.  Qualified Immunity** .

Defendants have also submitted that, if the Court finds plaintiff may establish her claims of political discrimination, they would be entitled in their personal capacity to qualified immunity.

---

[3] One cannot disregard the fact that OSIPE is the office of the Electoral Commission which  handles the registry of voters for the Commonwealth of Puerto Rico's general elections, prepares the list and updates same, and controls the information and electronic process.

Plaintiff submits that upon taking away the duties of her position, as a career employee of the CEE who choose not to identify herself with a political party, defendants would have known they could not interfere with her First Amendment rights to free expression and association, a right in continuing employment that was clearly established.  It is plaintiff's averment the amendment provided by Act No. 115 of April 25, 2003, eliminated the provisions of Law No. 113 with respect to political balance in the office where plaintiff works "OSIPE" for which at least after April 25, 2003, the conduct of defendants would not be protected by qualified immunity.

Defendants' qualified immunity is predicated on the doctrine of qualified immunity which protects government officials who perform discretionary functions from suit and from liability for monetary damages under Section 1983. *See* Roldán-Plumey v. Cerezo-Suárez, 115 F.3d 58, 65 (1st Cir. 1997). In assessing qualified immunity, the Court employs a three part test. *See* Savard v. Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003). First, the threshold inquiry is whether the plaintiff has established a constitutional violation. *See* Savard, 338 F.3d at 27; see St. Hilaire v. Laconia, 71 F.3d 20 (1st Cir. 1995). The second inquiry is whether the law was clearly established at the time of the violation. *See* Savard, 338 F.3d at 27. The final question is whether a reasonable official, situated similarly to the defendant, would have understood that the conduct at issue violated the clearly established law. *See* Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001).

As a career employee, plaintiff's interests in continued public employment are protected under the Fourteenth Amendment. *See* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532,

541, 105 S.Ct. 1487 (1985); Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005).  Plaintiff has thus established, in regard to her employment, being a career employee, she would suffered a constitutional violation if she is dismissed and/or demoted or if she suffers an adverse employment action as a result of political discrimination or in violation of her constitutional right to free association.

Secondly, plaintiff's rights were clearly established at the time of the alleged putative violation. See Crawford-El v. Britton, 523 U.S. 574, 592-593, 118 S.Ct. 1584 (1998); Padilla-García, 212 F.3d at 74 (stating, "[i]t is now well established that political patronage restrains freedom of belief and association, core activities protected by the First Amendment."); Roldan-Plumey, 115 F.3d at 65-66.

Thus, the third prong of the equation remains to be examined as to whether defendants, as reasonable officers, would have understood the actions taken against plaintiff were contrary to her protected constitutional rights, in particular, considering the amendments and the requisite of political balance imposed by the Puerto Rico Electoral Law.  The action taken by defendants should be deemed minimal inasmuch it is uncontested that plaintiff was not demoted and was not hindered from receiving the employment benefits and increases.  Some changes were undertaken as to some of plaintiff's duties in light of particular tasks and assignments as to which political balance was deemed necessary.  These are short of an adverse

Maria del Carmen Morales Sánchez v. Aurelio Gracia, et al.
Civil No. 04-2393 (JAG)
Report and Recommendation
Page No. 16

personnel action or creation of a work environment detrimental to plaintiff Morales Sánchez

which affected her conditions of employment.[4]

In a situation such as this one, a plaintiff who has not been dismissed nor the benefits

or salaries affected, must be able to establish having sufficient proof on the claim that, since her

deprivation of duties, her work situation was so "unreasonably inferior to the norm," that it

violated the First Amendment, as being deprived of any property right protected by the

Fourteenth Amendment. *See* Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st

Cir. 1989) (*en banc*) (announcing this circuit's standard for evaluating First Amendment political

affiliation-based employment discrimination claims where the employee has not been

discharged).[5]

Pension rights, seniority, fringe benefits, and the security represented by government

employment all may be retained in the instant case because plaintiff Morales Sánchez nominally

may continue to hold the same job she previously held.  The uncontested facts show that

defendants' actions in this case obviously were motivated by lawful concerns.  Defendants have

submitted a lawful reason for the action taken, namely, to comply with the commands of reform

provisions to the Puerto Rico Electoral Act.[6]   Under such situation, if the defendants

---

[4] Plaintiff's contention that someone else was appointed to her position [Mrs. Brenda L. González Sánchez in a trust position by the Puerto Rico Independent Party as Control Supervisor ] was subject of aa letter from the Personnel Department with notice to the appointing authority that such action could not be undertaken for being a trust employee whose duties pertained to plaintiff Morales Sánchez' position as a career employee.  *Memo dated 2-2-2005.*

[5] "... insubstantial changes in an employee's work conditions and responsibilities, even when politically motivated, either would not reasonably chill the employee's exercise of the right to free political association, or would cause a level of burden that is almost certainly outweighed by the government's need to protect its own interest in implementing new policies. Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d at 1217.

[6] In dealing with the Electoral Law reform  indirectly object of scrutiny herein, we cannot disregard a real concern that too much judicial intervention may unjustifiably interfere with the electorate's ability to see its political aims translated into action sought through its general purposes of seeking political balance within the Electoral Commission. Still, compliance with

demonstrate that there is some policy justification for internal reshuffling of duties, it would be wise to refrain from any further balancing, unless clear constitutional provisions are infringed.

Plaintiff, of course, must be given the opportunity to refute the government's asserted justification was but a pretext for discrimination.  In the instant case, plaintiff Morales Sánchez has sustained no such pretextual nature for the action taken by defendants, which have not significantly affected her working conditions, benefits or position.[7]

"[N]ot everything that makes an employee unhappy" is an adverse action. *See* Smart v. Ball State Univ., 89 F.3d 437, 441 (7th  Cir. 1996)(finding under Title VII); *accord* Russell v. Principi, 257 F.3d 815, 818 (D.C.Cir. 2001). "Actions short of an outright firing can be adverse within the meaning of Title VII, but not all lesser actions by employers count." Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C.Cir. 2002). Some types of adverse actions are obvious, such as discharge or failure to promote. For those that are less clear, a plaintiff must show an action with "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities." Brown v. Brody, 199 F.3d 449,  457 (C.A.D.C.  2006). The employment decision must inflict "objectively tangible harm." Russell, 257 F.3d at 818. "An employment decision does not rise to the level of an actionable adverse action ... unless there is a tangible change in the duties or working conditions constituting a

---

local law, would not serve qualified immunity under distinct circumstances when constitutional mandates are infringed, adverse employment action is found or First Amendment violations are involved.

[7] In fact plaintiff Morales Sánchez' deposition testimony reveals that, if she would not identify herself with a political party, she  would be offered a change of office or status at another agency, which she refused and even the Human Resources Director indicated she would not do so. Morales Sánchez' depo pp. 51-52.  Additionally, plaintiff also recognized as to claims of anxiety she does not take daily medication, only when she deems necessary and the last time being November of 2005. *Morales Sánchez' d*epo. *p. 51.*

material employment disadvantage." <u>Stewart v. Evans</u>, 275 F.3d 1126, 1134 (C.A.D.C. 2002) (citation omitted).

Plaintiff Morales Sánchez' submissions as to the scope of adverse employment decision and the limited employment repercussions resulting from defendants' actions, with the contention the reasons for same were in compliance with the Electoral Reform Act demand for a political balance which has not been rebutted by plaintiff as being pretextual.

In view of the above, defendants are entitled to qualified immunity. Accordingly, it is recommended that defendants' summary judgment request in their personal capacity be GRANTED.

**C. Supplemental State Claims**.

Plaintiff Morales Sánchez has also filed under the general state tort statute, 31 L.P.R.A. §5141. *Complaint* ¶7. Article 1802 is Puerto Rico's general torts statute which provides: "A person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31 § 5141. Discrimination in employment cases is a recognized cause of action under Article 1802. *See* <u>Torres Hernández v. Padilla</u>, 634 F.Supp. 144 (D.P.R.1986).

However, pendent or supplemental jurisdiction claims filed by plaintiff are subject to this Court discretionary power. The complaint herein raises a claim for acts and omissions under Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. Sec. 5141. *Complaint* ¶7.

Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between

that claim and the state claim can be found to constitute, but one constitutional case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. *See* United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966); Rodríguez v. Mortgage, 57 F.3d 1168, 1175 (1st Cir. 1995).

In Gibbs, 383 U.S. at 726, the Supreme Court ruled that a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. *See* Martínez v. Colón, 54 F.3d 980, 990 (1st Cir. 1995).

The preferred approach is pragmatic and case-specific. Thus, in "an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims." Rodríguez v. Doral Mortgage Corp, at 1177; Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996).

The exercise of pendent jurisdiction being discretionary, and there remaining no cognizable federal claims in this litigation, it is recommended to the Court to decline to exercise pendent jurisdiction as to plaintiff's state law claims, dismissing them without prejudice.

Maria del Carmen Morales Sánchez v. Aurelio Gracia, et al.
Civil No. 04-2393 (JAG)
Report and Recommendation
Page No. 20

## CONCLUSION

In view of the foregoing, the Court finds plaintiff has failed to set forth a claim under federal law for which relief can be granted.  Accordingly, it is recommended that defendants' Motion for Summary Judgment, which is filed solely as to their personal capacity, be **GRANTED**[8] (**Docket No. 39**).

**IT IS SO RECOMMENDED**.

The parties have TEN (10) working days, to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th day of July of 2007.

s/**CAMILLE L. VELEZ-RIVE**
**CAMILLE L. VELEZ-RIVE**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] Co-defendant Gracia is the only defendant who was sued in his official capacity for purposes of injunctive relief.  Co-defendant Gracia has not requested summary judgment as to the claims filed against him in his official capacity.  Accordingly, the claims against Gracia in his official capacity for injunctive relief remain and are not object of this report and recommendation. If Gracia files a request for summary judgment of he claims filed against him in his official capacity, in light of this report and recommendation, those claims should be disposed off according to the above.