IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---

MARIA DEL CARMEN MORALES SANCHEZ,

**Plaintiffs**

**v.**

AURELIO GRACIA, <u>et al.</u>,

**Defendants**

**CIVIL NO.** 04-2393 (JAG)

---

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

On December 17, 2004, Maria del Carmen Morales Sanchez ("plaintiff") filed this action against Aurelio Gracia in his personal and official capacities (the latter for purposes of declaratory judgment and injunctive relief), and against Eduardo Nieves Cartagena, Hugo F. Cruz and Frances Miranda Amadeo in their personal capacities (collectively "defendants"), based on allegations that defendants, who are co-workers of plaintiff at the Puerto Rico State Electoral Commission ("CEE" for its acronym in Spanish), attempted to force her to make public her political affiliation in order to continue her employment.[1] (Docket No. 1).

---

[1] Although the Complaint does not qualify plaintiff's claims in this way, plaintiff states in her Opposition to Motion for Summary Judgment: "[T]he plaintiff's only claim against the defendants in their official capacities is related to the issuance of a declaratory judgment and a permanent injunction. The rest of the claims relate to the defendants in their individual capacities for their own acts or omissions." (See Docket No. 45, page 5). However, co-defendant Aurelio Gracia is deemed to be the only

Civil No.  04-2393 (JAG)                                    2

Plaintiff further alleges that because she refused to identify with a political party, she was deprived of duties and responsibilities and was subject to political discrimination in violation of the First and Fourteenth Amendments of the United States Constitution, and the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 1983 ("section 1983").  Also, plaintiff invokes the Court's supplemental jurisdiction alleging violations to Articles 1802 and 1803 of the Puerto Rico Civil Code, the Commonwealth's tort statutes, P.R.Laws Ann. Tit. 31 §§ 3151 and 3152, among other state law provisions.

Pending before the Court is a Motion for Summary Judgment filed by defendants on September 14, 2006.  (Docket No. 39).  In said motion, defendants allege that plaintiff lacks a cause of action against them because she did not suffer an adverse employment action, was never dismissed from her employment at the CEE and has not been denied the promotions and salary increases that corresponded.  Additionally, defendants claim that if there should be a finding that an adverse employment action did take place, then they are entitled to qualified immunity because at the time they allegedly asked plaintiff to identify with a political party, they were complying with the purposes of the Electoral Law, which

---

defendant sued in his official capacity since, being the only supervisor, he would be the only defendant against whom an injunction could be issued.

Civil No.  04-2393 (JAG)                                        3

required that the CEE keep a balance of political parties in the office where plaintiff worked.[2]

On March 7, 2007, the Motion for Summary Judgment was referred to United States Magistrate Judge Camille Velez-Rive for Report and Recommendation. (Docket Nos. 51, 52).[3]  On July 6, 2007, the Magistrate Judge issued a Report and Recommendation in which she recommended that the Court grant defendants' motion. (Docket No. 59).  Plaintiff filed timely objections to the Report and Recommendation on July 20, 2007 and defendants replied to said objections on August 6, 2007 (Docket Nos. 60, 63).  Upon de novo review of those portions of the Report and Recommendation to which plaintiff objects, the Court **ADOPTS** the Report and Recommendation in its entirety and accordingly, **GRANTS** defendants' Motion for Summary Judgment.

## FACTUAL BACKGROUND[4]

The facts relevant to the issues at hand are as follows.  At all relevant times, plaintiff has been a career employee of the CEE,

---

[2] Defendants also discuss that in their official capacities, they enjoy Eleventh Amendment immunity.  However, this argument was not part of the Magistrate Judge's Report and Recommendation and is likewise not addressed here, for the reason stated in footnote 1, above.

[3] The undersigned was assigned this case on January 28, 2007, pursuant to the retirement of Hon. Judge Hector M. Laffite. (See Docket No. 50).

[4] The Court culls the facts from the parties' filings, as well as the Report and Recommendation.

Civil No.  04-2393 (JAG)                                         4

assigned to work in the Information and Electronic Processing Systems Office ("OSIPE" for its acronym in Spanish).  OSIPE is the office of the CEE that handles the registry of voters of the Commonwealth of Puerto Rico's general elections, prepares and updates the list of voters, and controls the information and electronic process.  Plaintiff has been a career employee at the CEE since 1978; from June 6, 1995 to June 30, 2000 she occupied the position of Executive Secretary II; and on August 23, 2000 she was reclassified as Supervisor of the Operators of Equipment Registry and Data Verification at OSIPE.  Plaintiff claims that defendants attempted to force her to reveal her political affiliation and also that because she refused to identify with a political party, from 2000 to 2005, defendants engaged in a pattern of conduct to make her resign from her position by stripping her duties as a supervisor, excluding her from work related to her supervisory position, and naming another person to her position.  As such, plaintiff claims, defendants were in violation of her First Amendment rights of freedom of belief and free association.

Defendants claim to have acted pursuant to the requirements set forth in Act No. 113 of July 6, 2000 ("Act No. 113") and Act No. 115 of April 25, 2003 ("Act No. 115"), both of which amended the Electoral Law of the Commonwealth of Puerto Rico, Act No. 4 of December 20, 1997; pursuant to the internal guidelines of the CEE approved in accordance with said statutes (CEE-RS-01-05); as well as

Civil No.  04-2393 (JAG)                                        5

pursuant to statements made by the Secretary of State which interpreted both acts.  According to defendants, the law required that the CEE (and OSIPE) undergo a restructuring to maintain a political balance among its employees.  Therefore, defendants contend that their actions were not motivated by discrimination but were only in compliance with the law, since it called for them to inquire about employees' political affiliation in order to abide by the political balance mandate.  Moreover, defendants contend that should the Court find that there was a constitutional violation, they are entitled to qualified immunity because when they allegedly asked plaintiff to identify with a political party, they were complying with the purposes of the Electoral Law.

**DISCUSSION**

A.  Standard for Reviewing a Magistrate Judge's Report and Recommendation

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a report and recommendation.  See 28 U.S.C. §636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico.  Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order.  28 U.S.C. § 636(b)(1).  The Court must then make a de novo determination of those portions of the report or specified proposed

Civil No.  04-2393 (JAG)                                      6

findings or recommendations to which objection is made.  See United States v. Raddatz, 447 U.S. 667, 673 (1980); Lopez v. Chater, 8 F. Supp.2d 152, 154 (D.P.R. 1998).  The Court may accept, reject or modify, in whole or in part, the Magistrate Judge's recommendations. "Failure to raise objections to the Report and Recommendation waives [that] party's right to review in the district court and those claims not preserved by such objections are precluded on appeal." Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992)(citations omitted).

B. Standard for Motion for Summary Judgment

     Summary judgment is appropriate when the evidence before the court shows that "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)." Seaboard Sur. Co. v. Greenfield Middle Sch. Bldg. Comm., 370 F.3d 215, 218 (1st Cir. 2004).  An issue is genuine for purposes of summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and a material fact is one which "might affect the outcome of the suit under the governing law." Hayes v. Douglas Dynamics, Inc., 8 F.3d 88, 90 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The moving party bears the initial responsibility of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party then bears the burden of "producing specific

Civil No.  04-2393 (JAG)                                              7

facts sufficient to deflect the swing of the summary judgment
scythe." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir.
2003). Those facts, typically set forth in affidavits, depositions,
and the like, must have evidentiary value; as a rule, "[e]vidence
that is inadmissible at trial, such as inadmissible hearsay, may not
be considered on summary judgment." Vázquez v. López-Rosario, 134
F.3d 28, 33 (1st Cir. 1998). "The mere existence of a scintilla of
evidence" is insufficient to defeat a properly supported motion for
summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 252.
Notwithstanding, when ruling on a motion of summary judgment, the
court "must scrutinize the evidence in the light most agreeable to
the nonmoving party, giving that party the benefit of any and all
reasonable inferences. Cox v. Hainey, 391 F.3d 25, 27 (1st Cir.
2004). While carrying out that task, the Court safely can ignore
"conclusory allegations, improbable inferences, and unsupported
speculation." Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir.
2000)(quoting Medina-Muñoz v. R.J.Reynolds Tobacco Co., 896 F.2d 5,
8 (1st Cir. 1990)).

C. Plaintiff's Objections to the Report and Recommendation

    Plaintiff objects to the Magistrate Judge's conclusions that,
because defendants were required by law to maintain a political
balance at CEE, (1) they did not have discriminatory animus and
would have effectuated the changes in plaintiff's duties regardless

Civil No.  04-2393 (JAG)                                          8

of her political affiliation and (2) they are protected by qualified immunity.

> (1) <u>Civil Rights Claim</u>

"An actionable section 1983 claim must allege facts sufficient to support a determination '(i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States.'" <u>Rumford Pharmacy, Inc. v. City of East Providence</u>, 970 F.2d 996, 998 (1st Cir. 1992) (citations omitted). There are two aspects to the second prong: (1) there must be an actual deprivation of a federally protected right; and (2) there must be a causal connection between defendants' conduct and the deprivation of such right. <u>See</u> <u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 559 (1st Cir. 1989).  Additionally, the causal connection element requires that plaintiff establish for each defendant, that the defendant's own actions deprived plaintiff of her protected rights. <u>Id.</u> at 562 (holding that liability may not be predicated upon a theory of <u>respondeat</u> <u>superior</u> because a supervisor can be liable only for his own acts or omissions).

The federally protected right asserted in this case is the freedom not to associate politically.  "The first amendment is implicated whenever a government employee is disciplined for his speech." <u>Bennis v. Gable</u>, 823 F.2d 723, 731 (3rd Cir. 1987) *citing* <u>Waters v. Chaffin</u>, 684 F.2d 833, 837 n. 9 (11th Cir. 1982).  "A

Civil No.  04-2393 (JAG)                                        9

citizen's right not to support a candidate is just as relevant for
First Amendment purposes as her right to support one." Galli v. New
Jersey Meadowlands Comm'n, 490 F.3d 265 (3$^d$ Cir. 2007); see Roberts
v. United States Jaycees, 468 U.S. 609 (1984).  Accordingly, it is
a constitutional violation to discipline an employee for exercising
his or her freedom not to associate with a political party.

A two part burden shifting framework is used to evaluate claims
of political discrimination. See Mount Healthy City Sch. Dist. Bd.
of Educ. v. Doyle, 429 U.S. 274, 287 (1977); see also Padilla-Gracia
v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000).   To
establish a prima facie case of political discrimination, a
plaintiff must produce sufficient direct or circumstantial evidence
to raise the inference that his political affiliation (or non
affiliation) was a substantial or motivating factor behind the
challenged adverse employment action. Padilla-Gracia, 212 F.3d at
74; Acevedo-Diaz v. Aponte, 1 F.3d 62, 66 (1st Cir. 1993);
Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994).  The
plaintiff's burden under Mt. Healthy goes directly to causation.
Padilla-Gracia, 212 F.3d at 74. To prevail in her prima facie case,
plaintiff must point to evidence in the record that would "permit a
rational factfinder to conclude that the challenged personnel action
occurred and stemmed from a politically based discriminatory
animus." Id. (citing Rivera-Cotto, 38 F.3d at 614).  However,
"merely juxtaposing a protected characteristic -- someone else's

Civil No.  04-2393 (JAG)                                    10

politics -- with the fact that plaintiff was treated unfairly is not
enough to state a constitutional claim." Correa-Martinez v.
Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990); see also
Rivera-Cotto, 38 F.3d at 614 ("Without more, a non moving
plaintiff-employee's unsupported and speculative assertions
regarding political discrimination will not be enough to survive
summary judgment").  What is required is a fact specific showing
that a causal connection exists that links the adverse employment
action to the plaintiff's politics. Correa-Martinez, 903 F.2d at
58.  The plaintiff must raise a plausible inference that she was
subjected to discrimination on the basis of her political views or
affiliation. Id.

    If the plaintiff proves her prima facie case, the burden then
shifts to the defendant, who must articulate a nondiscriminatory
ground for the adverse employment action and establish, by a
preponderance of the evidence, that he would have taken the same
action regardless of the plaintiff's political beliefs (this is
commonly referred to as the Mt. Healty defense). Padilla-Gracia,
212 F.3d at 74; Acevedo-Diaz v. Aponte, 1 F.3d at 66.  "... [T]he
defendant employer's Mt. Healthy defense ensures that a
plaintiff-employee who would have been dismissed in any event on
legitimate grounds is not placed in a better position merely by
virtue of the exercise of a constitutional right irrelevant to the
adverse employment action." Acevedo-Diaz v. Aponte, 1 F.3d at 66.

Civil No.  04-2393 (JAG)                                          11

"In a political discrimination case, the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Id. at 77.  "The evidence by which the plaintiff established her prima facie case may suffice for a fact finder to infer that the defendant's reason is pretextual and to effectively check summary judgment." Padilla-Gracia, 212 F.3d at 74. Ultimately, it is the defendant's burden to persuade the factfinder that its reason is credible. Id. at 77-78.  The defendant must show that the allegedly bona fide reasons for the adverse employment actions were sufficient by themselves to justify the decision. Acosta-Orozco v. Rodriguez-De-Rivera, 132 F.3d 97, 103 (1st Cir. 1997).

The Magistrate Judge, taking the parties' submission for summary judgment in the light most favorable to the non-movant, deemed plaintiff to have presented a prima facie case of discrimination because defendants did not object to plaintiff's claims that she had been stripped of most of her duties.  Although plaintiff remained employed at the CEE and did not suffer any decrease in salary or benefits, her allegation that she was stripped of her duties, if properly supported, may be considered sufficient evidence to warrant a short of termination or constructive discharge claim. See Torres-Martinez v. Puerto Rico Dept. of Corrections, 485

Civil No.  04-2393 (JAG)                                        12

F.3d 19 (1st Cir. 2007).  The Magistrate Judge moved on to examine

whether defendants had met their burden under <u>Mt. Healthy</u>.[5]

   The Magistrate Judge concluded that "[i]t is under the legal

provisions of the Electoral Reform Act that the CEE sought to

arrange for all its employees' political identification, and

accordingly, meet the political balance required" and that therefore

"any changes in plaintiff's work situation were not motivated by

discrimination on the basis of political affiliation" since "the

changes would have been made regardless of plaintiff's political

affiliation."  The Magistrate Judge noted that plaintiff does not

contest that the legal provisions (Act No. 113 and Act No. 115) were

enacted nor that the internal memorandum[6] is a sham for

discriminatory animus, but only that her interpretation of the law

does not cover her position as a career employee at OSIPE that's not

identified with a political party and that defendants had presented

sufficient evidence to show otherwise.

_____

   [5] The parties did not object to the Magistrate Judge deeming
the <u>prima facie</u> case proven.  However, the Court notes that a <u>prima
facie</u> case cannot be established by only proving that an adverse
employment action took place. The plaintiff has the burden of
showing that the substantial or motivating factor underlying said
employment action was her political affiliation.

   [6] The Memorandum made reference to here is a Memorandum from
the President of CEE to the Administrative Board of OSIPE in which
it is stated that the Board should continue functioning under CEE
Resolution CEE-RS-01-05, which mandated that party balance be
maintained at OSIPE. While the Resolution was issued in 2001 (after
the enactment of Act No. 113, but before the enactment of Act No.
115 in April of 2003), the Memorandum is dated March 12, 2004.

Plaintiff's objection goes to the appropriateness or sufficiency of defendants' Mt. Healthy defense, which was the deciding factor in the Magistrate Judge's determination that no political discrimination took place in this case.  Plaintiff first states that following the law cannot be taken as a justification for violating her constitutional rights.  Plaintiff argues that "the law does not provide for the stripping of the duties of career employees of the SEC [(CEE)] who choose not to identify with a party" nor for "forcing existing employees to identify with a party." Additionally, plaintiff argues the reasoning followed by the Magistrate Judge in reaching her conclusions is based on the false premise that Act No. 115 of April 25, 2003 did not eliminate the provisions in Act No. 113 that imposed the requirement of maintaining a political balance at CEE.  Plaintiff concedes that Act No. 113 imposed on the CEE that it maintain a political balance amongst its employees.  However, she interprets Act No. 115 as having repealed the portions of Act No. 113 that imposed said requirement.  According to plaintiff, since Act No. 115 came into effect, on April 25, 2003, the requirement of political balance no longer exists. As such, defendants cannot claim to have been acting pursuant to a statutory mandate of political balance, at least since April 25, 2003.

Defendants contest this interpretation of the law, arguing that Act No. 115 does not state that the political balance was eliminated

Civil No.  04-2393 (JAG)                                    14

from OSIPE and that no amendment was made to the item which orders
the establishment of political balance at OSIPE.   Further,
defendants argue that should there be any doubt as to whether Act
No. 115 eliminated the political balance requirement, a press
release in 2003 by the then Secretary of State makes it clear that
the legislative intent was to maintain the partisan balance at OSIPE
since otherwise, the legislature would have included transitional
provisions for the change.

     The Court first addresses plaintiff's objection that in spite
of the mandate of political balance contained in Act No. 113,
defendants were not justified in their actions since "the law does
not provide for the stripping of the duties of career employees of
the SEC [(CEE)] who choose not to identify with a party" nor for
"forcing existing employees to identify with a party."   Since
plaintiff basically argues that the reason set forth by defendants
(following the mandate in the Electoral Law) is not a bona fide
reason for the adverse employment actions, the Court will first
ascertain whether defendants' actions fall within the mandate of Act
No. 113.  If so, and since plaintiff does not discredit defendants'
proffered nondiscriminatory reason, we can conclude that the reason
set forth by defendants is indeed a bona fide reason for their
actions.

     In its Statement of Motives, Act No. 113 states that it
provides for the reorganization of OSIPE in order to comply with

Civil No.  04-2393 (JAG)                                        15

"the partisan balance principle in the appointment and contracting of personnel and the distribution of tasks and functions."  In its text, said statute orders the reorganization of OSIPE using the same quoted language.  Moreover, the act mandates that "[a]t all levels of each operational unit, division or subdivision of OSIPE, there shall be an equal representation in number, rank, functions and access, of employees recommended by the Electoral Commissioners of each principal party."

As evidenced by the quoted language above, Act No. 113 requires that OSIPE be restructured based on the employees' political affiliations.  Accordingly, CEE issued Resolution CEE-RS-01-05 in 2001 to incorporate the political balance requirement of Act No. 113.  In order to restructure an office to make sure that at all levels, there is an equal number of representatives from each principal political party, an accounting of the current employees' political affiliations must be necessarily performed.  In other words, political balance can only be achieved if employees' political affiliations are known.  As such, it was objectively reasonable for the defendants to request plaintiff to inform of her political affiliation in order to properly place her within the structure of political party balance within OSIPE.

Further, Act No. 113 calls for the reshuffling of tasks if necessary to achieve a political balance within OSIPE: "the principle of partisan balance for ... the distribution of tasks and

functions shall prevail...." Accordingly, OSIPE was to distribute the functions of its employees to make sure that at all levels, the political parties were equally represented. As such, all of OSIPE's employees and not just plaintiff, were subject to changes in their tasks and duties as part of the office's restructuring pursuant to Act No. 113. Changes were not made to discriminate against plaintiff for not identifying with a political party, but to comply with the requirement of political party balance.

The mandate in Act No. 113 and the guidelines in the CEE's resolution are by themselves bona fide reasons sufficient to justify defendants' actions. Moreover, all the employees at OSIPE were subject to changes in their employment if necessary to comply with the political balance mandate. Accordingly, defendants have met their burden. Since plaintiff does not adduce evidence that discrimination was more likely than not a motivating factor in defendants' actions, she has not discredited defendants' proffered nondiscriminatory reason. As such, her objection in this respect is without merit.

Having determined that defendants' actions were motivated by a desire to comply with the political balance requirement of Act No. 113 and not by discrimination on the basis of political non-affiliation, the Court now must now turn to plaintiff's second objection, which requires that we analyze whether the political balance requirement was eliminated by Act No. 115.

Act No. 113 states in relevant part:

Section 1.- Subsection A of Section 1.011 of Act No. 4 of December 20, 1977, as amended, is hereby amended to read as follows:

Section 1.011.- Powers and Duties of the Chairman and the Vice-Chairmen.-

A.- Of the Chairman: The Chairman shall be the executive official of the Commission and shall be responsible for the execution and supervision of the electoral procedures within an atmosphere of absolute integrity and impartiality. In discharging this task, he shall have the powers, attributes and prerogatives inherent to the office, including the following, but without it being understood as a limitation:

(a) …

(b) …

*The Auditing Office and the Information and Electronic Processing Systems Office (OSIPE, Spanish acronym), shall be a part of the administrative divisions of the Commission, in which the principle of partisan balance for the appointment and contracting of personnel and the distribution of tasks and functions shall prevail in the most rigorous manner.*

Thus, the reorganization of the Auditing Office and the Information and Electronic Processing Systems Office (OSIPE, Spanish acronym) of the Commission is hereby directed, in order to comply with the principle of partisan balance, no later than July 1, 2001.

The Chairman shall appoint the directors of both offices, pursuant to the norms adopted by the Commission prior to the effectiveness of this Act. The Chairman shall accept the recommendations of the Electoral Commissioners of the main parties for the appointment of the rest of the qualified personnel, for both offices. The Chairman shall determine the professional, academic or experience requirements of the personnel that shall hold each position. The Electoral Commissioners shall be the ones to determine who shall represent their respective political parties for each position.

In the case of the Auditing Office, the total number of auditors must be equally distributed, with auditors recommended by each Electoral Commissioner. A Head Auditors Board shall be constituted which shall act

jointly with the Director of this office. The Chief Auditors shall be recommended by the Electoral Commissioners of each main political party and shall have equal rank, functions and access to all procedures in the Auditing Office. No internal audit shall be conducted without the joint intervention of auditors affiliated to each main political party.

A Board of Technicians shall be appointed in the Information and Electronic Processing Systems Office (OSIPE, Spanish acronym), constituted by a representative of each Electoral Commissioner of the principal parties, all of whom shall have equal rank, functions and access to all the procedures in OSIPE, and shall act in an associated manner before the Director in all the procedures of said Office. In the event that a firm or individual is contracted to carry out works, counsel or to sell equipment, the Director of OSIPE must have the unanimous consent of the Board of Technicians. If there is no such unanimity, the case shall be appealed to the full Commission.

No official, employee, or internal or external advisor of OSIPE may make changes in the programming without the presence or express and unanimous authorization of the Board of Technicians or their respective representatives. Absolutely no one shall intervene, access or modify the programming used by OSIPE outside of its installations.

All internal or external advisors of the Directors of OSIPE shall be appointed or contracted through partisan balance under equal conditions. The above shall not apply when the contracting is of a firm or enterprise for the purpose of installing equipment or developing a special and temporary project, that shall not extend for more than six (6) months.

*At all levels of each operational unit, division or subdivision of OSIPE, there shall be an equal representation in number, rank, functions and access, of employees recommended by the Electoral Commissioners of each principal party.*

(emphasis ours)


Act No. 115 states in pertinent part:


Section 1.- TITLE I of Act No. 4 of December 20, 1977, as amended is hereby amended to read as follows:

Section 1.011.- Powers and duties of the President and the Vice-Presidents.-

A  --The President. The President shall be the executive officer of the Commission and shall be responsible for the execution and supervision of the electoral procedures within an atmosphere of absolute integrity and impartiality. In discharging this task he shall have the powers, attributes and prerogatives inherent to the office, including, but without being limited to, the following:

(a) …

(b) Selecting, recruiting and appointing the personnel needed to further the purposes of this Act, as well as fixing their corresponding remuneration according to the financial resources of the Commission. The appointments of the heads of divisions of the Commonwealth Commission made by the President shall be confirmed with the affirmative vote of at least two (2) Commissioners. *Furthermore, the heads, and the seconds-in-command of the divisions, if any, shall not be supporters of the same party. When the Commission carries out special projects, the personnel to be recruited shall be appointed in equal parts from supporters of the three (3) principal parties that have obtained the greatest number of votes in the preceding general election.* Any personnel appointments must be subject to regulations adopted to this effect, and no person who has been convicted of a crime that implies moral turpitude, or an offense of an electoral nature, may be appointed. Likewise, Commission personnel may not appear as candidates for elective public office nor fill any office, post or position within the organization of a political party, nor participate in electoral campaigns or campaign for any candidates, with the exception of the employees appointed to carry out functions in the Electoral Commissioners' Offices.

The President shall name an Internal Auditor to control the revenue, expenses and payments from the funds for the functioning of the Commission and shall assign the necessary personnel to perform such function. He shall also appoint a Director for the Office of Electronic Information Systems and Processing (OSIPE, Spanish acronym).

*In the Office of Electronic Information Systems and Processing, a Board of Technicians shall be appointed, consisting of a representative of each Electoral Commissioner of the principal parties, all of the same*

*rank*, functions and access to all the procedures in OSIPE, and shall Act as a team before the Director in all the proceedings in that office. When any firm or individual is hired to perform jobs, counseling or to sell equipment, the Director of OSIPE must have the unanimous consent of the Board of Technicians. If there is not such unanimity, the case shall be appealed to the plenary of the Commission.

No public servant, employee, internal or external counsel of OSIPE may perform programming changes without the presence or express and unanimous authorization of the Board of Technicians or their respective representatives. Absolutely no one may intervene, access or modify the programming used by OSIPE outside its installations.

*All the external or internal consultants and aids of the Director of OSIPE, must be appointed or hired in a party neutral way under the same conditions.* The above does not apply when the hiring concerns a firm or enterprise with the purpose of installing equipment or developing a special and temporary project that does not extend beyond six (6) months.

...."

(emphasis ours)

The language cited above shows that Act No. 113 and later, Act No. 115, substituted subsection (b) of Section 1.011, Part A, of the Electoral Law.  The emphasized portions of Act No. 113 are what plaintiff argues established the political balance requirement. Since they are not present in Act No. 115, plaintiff sustains that the requirement was abolished by said act.

There is no contest as to whether the emphasized portions of Law No. 113 are present in Act No. 115.  Clearly, they are not.  The question is then, whether that fact means that Act No. 115 eliminated the political balance requirement established by Act No. 113.  The Court holds that it does not.

Civil No.  04-2393 (JAG)                                      21

While Act No. 113 contains in its Statement of Motives the intention of creating a political balance at the CEE, Act No. 115's Statement of Motives is geared towards the issue of political campaign financing.  Nowhere in the Statement of Motives of Act No. 115 does it state that it is the Legislature's intention to create political balance nor does it state that it is its intention to abolish the political balance mandated in Act No. 113.  The main amendments that Act No. 115 makes to the Commonwealth's Electoral Law are in the realm of political campaign funding and auditing. However, the language of the sections previously amended by Act No. 113 to create the political balance requirement was changed in Act No. 115.  Instead of stating that "the principle of partisan balance for the appointment and contracting of personnel and the distribution of tasks and functions shall prevail in the most rigorous manner" or that "[a]t all levels of each operational unit, division or subdivision of OSIPE, there shall be an equal representation in number, rank, functions and access, of employees recommended by the Electoral Commissioners of each principal party" like Act No. 113 states, Act No. 115 states that "the heads, and the seconds-in-command of the divisions, if any, shall not be supporters of the same party," that "[w]hen the Commission carries out special projects, the personnel to be recruited shall be appointed in equal parts from supporters of the three (3) principal parties that have obtained the greatest number of votes in the preceding general

election" and that "[a]ny personnel appointments must be subject to regulations adopted to this effect."  Furthermore, Act No. 115 requires that "[a]ll the external or internal consultants and aids of the Director of OSIPE, must be appointed or hired in a party neutral way under the same conditions."  All of these provisions in Act No. 115, although different from those in Act No. 113 that mandate partisan balance at OSIPE, further the principle of partisan balance in said office.

The fact that Act No. 115 does not have as one of its principal motives to change the way OSIPE had been organized pursuant to Act No. 113, combined with the fact that it contains provisions that clearly further the partisan balance principle, leads this Court to conclude that Act No. 115 did not revoke the mandate of partisan balance of Act No. 113.  Since the state of the law, as to the requirement that partisan balance be maintained at OSIPE, has not changed, defendants' actions are also justified as of the enactment of Act No. 115.

Defendants have met their burden of establishing that there were bona fide reasons sufficient by themselves to justify the adverse employment actions; their evidentiary proffer compels the finding that political discrimination did not constitute a 'but for' cause for the alleged stripping of duties.  Since plaintiff's claims do not rise to a level of constitutional violation, they are not cognizable under section 1983.

Civil No.   04-2393 (JAG)                                        23

D. Qualified Immunity Defense

Plaintiff also objects to the Magistrate Judge's conclusion that defendants are entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The First Circuit employs a three-part test when determining if a public official is entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004)(citing Suboh v. District Attorney's Office of Suffolk Dist., 298 F.3d 81, 90 (1st Cir. 2002); Harlow, 457 U.S. at 818-819). To overcome a qualified immunity defense, a plaintiff must lead the Court to answer all three prongs of this test in the affirmative. Mihos v. Swift, 358 F.3d at 98-99. "In order to conclude that the right which the official allegedly violated is 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483

Civil No.   04-2393 (JAG)                                    24

U.S. 635, 640 (1987).  Moreover, in determining whether a similarly
situated reasonable official would have understood that the
challenged action violated the constitutional right at issue, "the
relevant question is whether a reasonable official could have
believed his actions were lawful in light of clearly established law
and the information the official possessed at the time of his
allegedly unlawful conduct."  Singer v. Maine, 49 F.3d 837, 844 (1st
Cir. 1995)(citations omitted).  "This objectively reasonable inquiry
is highly fact specific . . . and in the context of qualified
immunity, summary judgment is precluded when disputed material facts
make pre-trial solution impossible."  Tejada Batista v. Fuentes
Agostini, 247 F.Supp.2d 73, 76 (D.P.R. 2003)(citing Swain v.
Spinney, 117 F.3d 1, 9-10 (1st Cir. 1997); Kelley v. LaForce, 288
F.3d 1, 7 (1st Cir. 2002)).

     The Magistrate Judge applied the First Circuit test and found
(1) that plaintiff's allegations, if true, establish a
constitutional violation; (2) that the right was clearly established
at the time of the alleged violation; but (3) that a similarly
situated reasonable official would not have understood that the
challenged action violated the constitutional right at issue.
Plaintiff's objection pertains to the third prong of test.

     Plaintiff bases her objection on the same argument that the
"law does not provide for the stripping of the duties of career
employees of the SEC [(CEE)] who choose not to identify with a party

Civil No.  04-2393 (JAG)                                              25

nor does it provide for forcing existing employees to identify with a party." She further argues that "a reasonable government official would have known that at least after the approval of Act #115, requiring an employee to identify with a political party and stripping her of her duties by naming another person to the same position for her denial to identify with a political party violates her rights to free speech and association and her right to continued employment."

The Court has already addressed the arguments that make up plaintiff's objection to the Magistrate Judge's conclusion that the defendants in this case are entitled to qualified immunity. The Court found that defendants' actions were not only motivated by compliance with the Electoral Law, but were also within the mandate of both, Act No. 113 and Act No. 115. A reasonable official would have found it necessary to inquire about plaintiff's political affiliation in order to comply with the political balance requirement imposed on OSIPE. Furthermore, any changes in her employment were also within the mandate of the law. Consequently, we can conclude that a similarly situated reasonable official would not have understood that the challenged action violated the constitutional right at issue here. As such, plaintiff's objection as to the issue of qualified immunity is without merit. Defendants, in their personal capacities, are entitled to qualified immunity.

Civil No.  04-2393 (JAG)                                          26

**CONCLUSION**

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation and **GRANTS** defendants' Motion for Summary Judgment, dismissing the claims against them in their personal capacities.[7]

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 7th day of September, 2007.

                                        S/Jay A. Garcia-Gregory
                                        JAY A. Garcia-GREGORY
                                        United States District Judge

---

[7] The Court notes, as stated in the Magistrate Judge's Report and Recommendation, that co-defendant Aurelio Gracia did not seek summary judgment of the claims against him in his official capacity.